Good morning, Your Honors, and may it please the Court. David Shapiro for Terry Hedin. I'd like to reserve two minutes for rebuttal, and I propose to begin with the District Court's basis for granting the motion to dismiss with prejudice, which was substantial burden and availability of damages under RFRA, and then turn to the basis for summary judgment in the same order, which was exhaustion of administrative remedies. As to substantial burden You're welcome to go that route, but if the exhaustion didn't work out, we wouldn't be dealing with these other issues, would we? That's true, and so I can start with exhaustion in that case, Judge McGowan. And exhaustion is fine any way you slice it, because the government concedes on page 18 of their brief that there's a genuine issue of fact as to whether the final stage grievances were mailed. There's a presumption in the law of mailing resulting in receipt, and if there's a genuine issue as to mailing, there's a genuine issue of receipt. But more to the point, it doesn't matter, because the defendant's own policy doesn't say that Mr. Hedin needed to do anything beyond mailing the final stage grievance. In fact, it said that he could treat the absence of a response as a bailout. Exhaustion. There's a regulation to that effect, that if he doesn't get a response, he can treat it as a denial. Exactly. Yes. There is. It's either in the CFR or in the program statement by the BOP accompanying the CFR. I believe it's in the CFR itself. The government also makes a new exhaustion argument that is not properly before the Court, because it was not raised by the district court. That argument relates specifically to the 12 days of EWL. If the Court considers the argument that the defendant's own policy is not properly before the Court, the court will not be able to make a decision on the basis of the 12 days of EWL.  Despite the other questions, I'm sorry. Did you have a question, Judge? I want to just make sure I understand. So if there is a genuine issue of fact over whether or not he mailed it, doesn't it just go back to the district court to resolve that question? Yeah. Well, the — I think that the Court would still need to reach the other issue. Why? I mean — Because the district court also granted the motion to dismiss on alternative grounds. And so once again — Well, but if it goes back and we say there's a tribal issue of fact, a genuine factual dispute, and the district court looks at everything again, gives them a chance to put more evidence in, and then says, well, I find, as a finding of fact, that he didn't mail it, there's no exhaustion. The case is over. I believe that's correct. However, the Court certainly could reach the other issues, because if the Court — The Court meaning the district court? No, no. I'm referring to this Court. But then it would be like an advisory hearing. Well, it's an advisory ruling in the abstract, because if, as Judge Paez says, the court determines there was no exhaustion, then we would have an advisory opinion, wouldn't we? No, I don't think so. If this Court remands solely on the issue of exhaustion, then the district court has already said that he didn't state a claim. So that would result in the same dismissal simply on other grounds. The district court wouldn't necessarily even need to hold the hearing on exhaustion that Judge Paez is referring to. If only — if this Court only reached the exhaustion issue, the district court could simply say, look, I already ruled that there wasn't a substantial burden, and I already ruled that damages are unavailable under RFRA. That's a sufficient basis for dismissal. There's nothing really further to do upon remand. And so — But you're referring to nothing more to do on the merits, not on exhaustion, right? That's right. I guess what I'm saying, Judge Toshima, is if the court just remanded on and said hold a hearing and determine whether exhaustion occurred, or, you know, or there was a genuine issue as to whether exhaustion occurred, there's already the district court opinion that says I'm dismissing with prejudice, not only on the grounds of exhaustion, but on the grounds of substantial burden. So the district court, in fact, wouldn't need to hear — hold any sort of hearing if this Court only remanded on the issue of exhaustion. The district court could simply say, I already said, dismiss for lack of substantial burden. Well, I think what we said in Albino is if there is a failure to exhaust, the case should be dismissed without prejudice. That's — that's also true. So why wouldn't we just — if we determine that there's a genuine factual dispute over exhaustion, why wouldn't we just vacate the judgment, just vacate it, and say decide whether or not he properly — there's a factual dispute. You've got to resolve these factual issues related to exhaustion. If he — if it goes back and the district court says, yeah, he exhausted, well, then the district court can — can enter its — you know, reach the merits and reenter its judgment, and they can appeal again. But — Or the district court could change its mind on the merits. But on the other hand, we've seen a lot of opinions that say, well, this wasn't exhausted, but even if it were, right, it goes on to the merits. That's — yes. There's plenty of Ninth Circuit cases like that, aren't there? There are. And this is a — and not only are there Ninth Circuit cases like that, but that's exactly what the district court did here. And I think there may also be a difference in terms of dismissal with prejudice versus dismissal without prejudice, in the sense that the district court said, I'm dismissing — if it were just an exhaustion issue, I'd dismiss without prejudice, but because I'm reaching these alternative holdings as to substantial burden and the availability of damages under RFRA, I'm going to dismiss with prejudice. But on this record — No, but the — Go ahead, Justice. No, but the law, I think, is that if there is an — if it has not been exhausted, then the district court shouldn't reach the merits at all, right? Right. I don't — I mean, that's the rule, isn't it? It's not a jurisdictional issue. It's a threshold issue. I believe that any court — there's no, to my knowledge, set order. I mean, I get the point, certainly, that there is a certain logical issue to doing it that way. But as you say, Judge Tsushima, there are any number of opinions that reach the merits, irrespective of an exhaustion issue. And here there are good reasons to reach the merits, because the holding is, frankly, rather outrageous on the substantial burden question. If a Christian prisoner had pled that exactly what Mr. Hedin pled, that essential items for the practice of his faith, whether it was a communion chalice or whether it was a crucifix for mass, were confiscated and he was denied access to them, no court would find that there wasn't a substantial burden. As for the 12 days of Yule, he pleads on ER 148 that they are considered a central tenet of his faith. These are considered high holy days akin to Christmas for members of the Christian faith and Hanukkah for the Jewish faith. Imagine if a prisoner of a different faith said that Passover or Ramadan were shrunk down to one day. No court would find the absence of a substantial burden. And as for qualified immunity, the law, the contours of the law are clearly established. There are any number of cases that have said that confiscation of items and limitations on central practices impose substantial burdens. And every court to reach the question has said that damages are available under RFRA, the Second Circuit, earlier this month, and Tanvir, the Third Circuit, and the DDC. I'll reserve the remainder of my time if there aren't further questions at this time. Thank you, Your Honors. NATALIE WHITE. May it please the Court, my name is Natalie White. I'm an Assistant United States Attorney, and I represent the government officials that have been named as defendants in this case. That's former Regional Director Juan Castillo, that's former Warden Marion Feather, that's Supervisory Chaplain Richard Kowalczyk, and that's the Chief Justice of the United States. We started this litigation over four years ago,  JUSTICE KENNEDY. Let me just get right to the heart of the issue that's bothering, I think, most of us. Do you agree that there's a controverted issue of fact on whether or not the plaintiff exhausted his administrative remedies? NATALIE WHITE. No, Your Honor. In fact, counsel- JUSTICE KENNEDY. All right. Now, then let me focus in. The issue of fact I think is to do up to the point of mailing his papers to the General Counsel, which is the last stage of review, right? General Counsel says his record shows he never received it. So he says he mailed it. General Counsel never received it. Isn't there a question of fact as to what happened in between? We have to assume the truth of the fact that he mailed it, right? At this point. NATALIE WHITE. That's correct, Your Honor. And we do not dispute for the purposes- JUSTICE KENNEDY. What else was he supposed to do, then? NATALIE WHITE. Well, for the purposes of summary judgment, we don't dispute that perhaps he mailed his remedies. However, Your Honor, there were facts before this Court when he was evaluating whether or not exhaustion was complete. And that is the fact that a plaintiff asserts that he did, in fact, mail these three, not one, but three separate BP-11s between a span of months, three different times, and that none of those were received at central office. So the dispute is not whether he mailed them, because for the purposes of exhaustion under the Bureau of Prisons, and it's the Bureau of Prisons that controls exhaustion and how it's defined, it has to be received. That's not just a BOP policy. That's- JUSTICE KENNEDY. Is that what it says? NATALIE WHITE. That's correct. That's not just a policy. That's Federal regulation. JUSTICE KENNEDY. Okay. Then let's accept that. So the fact of non-receipt- NATALIE WHITE. Is not disputed, Your Honor. JUSTICE KENNEDY. Wait a minute. The question is, whose fault is that, right, or whether he did everything that's reasonable to ensure that it was received by the General Counsel? NATALIE WHITE. Your Honor- JUSTICE KENNEDY. What is there in the record that shows he didn't? NATALIE WHITE. Well, Your Honor, that's not correct. In order for an inmate to exhaust, he knows, they all know, that it must be received on the other end. It is not uncommon- JUSTICE KENNEDY. But all, after all, he's in prison. You know, he can't walk it, you know, to the General Counsel's office across the country, right? NATALIE WHITE. That's correct, Your Honor. And there are- JUSTICE KENNEDY. So what more can he do besides put it in the mail? NATALIE WHITE. Well, there's- JUSTICE KENNEDY. What's he required to do beyond putting it in the box? NATALIE WHITE. His requirement is to exhaust, which is to ensure receipt, which it is not uncommon, Your Honor, for a remedy to perhaps not make it to a Reach office. JUSTICE SOTOMAYOR. What's he supposed to do, then? NATALIE WHITE. Very common for an inmate to go see a case counselor, case manager, one of the unit team, to ensure whether it's been received. The BOP has an affirmative- JUSTICE KENNEDY. He says very common, though. JUSTICE SOTOMAYOR. He said very common. But what is he required to do in the policy statement or the regulation? JUSTICE KENNEDY. Very common is not what's required by the regulation. It doesn't say you have to do everything that's very commonly done, right? NATALIE WHITE. Well, there- JUSTICE KENNEDY. And isn't this like, you know, the kind of remedy that Ross says is unavailable? NATALIE WHITE. Well, there is a remedy process in place, Your Honor. What if an inmate only  JUSTICE KENNEDY. I know that, but the question, was it available to this person? NATALIE WHITE. Absolutely. JUSTICE KENNEDY. Well, he put it in the mail. What else was he supposed to do? You haven't answered that question. NATALIE WHITE. If it is not received, if an inmate does not receive a receipt, different from a response, Your Honor. You mentioned a response is indicated as exhaustion. That is different than the receipt of the actual remedy. So if they don't receive a receipt, they are allowed to inquire with their counselor to resubmit their remedy and restart the clock. JUSTICE KENNEDY. So in the regulation that talks about how the prisoner is to exhaust, does it say that the general counsel's office will provide a receipt to the prisoner that they received it? NATALIE WHITE. There is, within the CFR, a requirement for the BOP to send a receipt to the inmate via sentry showing that the remedy was received. JUSTICE KENNEDY. And did the general counsel do that? NATALIE WHITE. Absolutely not in this case, Your Honor, because it was not received. SOTOMAYOR You know, I'll tell you what really bothers me about this case, is this is a lot of time and money over a ridiculous exhaustion requirement, which the government could just deem them filed. He's got the letters. It seems unlikely, his credibility was in question, that he ginned these up after the fact. But he's got the letters. He went all through the procedures. Why couldn't the government just deem them filed and move on from there? And we wouldn't be in the Ninth Circuit months, years beyond when his complaint was. Could you do that? NATALIE WHITE. Well, first of all, that is not a certainty, that we wouldn't still be here years after. But — SOTOMAYOR Well, then we'd be talking about the claim and the issue that Mr. Shapiro wanted to talk about, which was RFRA. NATALIE WHITE. Well, in response to your question, Your Honor, the government could do that, but that would be a terrible precedent to set, with 200,000 inmates being allowed to just assert that they filed their remedies, and that would be sufficient. SOTOMAYOR We see a lot of these cases, and if you want to talk about what's common and what's not common, we rarely actually see the letter that was sent on to a specific general counsel. That's a very different, you know, B-9, B-10. Now we're in B-11 land. We rarely actually see the letter that was addressed to the general counsel. So it wouldn't be a bad precedent, and you can resolve one case without setting a precedent, can't you? NATALIE WHITE. It's an internal — SOTOMAYOR I'm just suggesting to you that this seems like an amazingly unfortunate use of government expenses and attorneys' fees when you could just get to the argument. NATALIE WHITE. Well, that's precisely our argument, Your Honor, is that this case could have ended at exhaustion and should have. In fact, the Court did end the case at exhaustion. It had facts before it. There was no material fact in dispute, which is a very important point that counsel has left out. The law is not that there is a genuine dispute of fact. It has to be material. It has to be a fact that if found in plaintiff's favor, he could prevail, which is not the case. SOTOMAYOR Did the Court determine that he did not mail these letters? NATALIE WHITE. The reasonable inference was that they were not mailed. SOTOMAYOR The question I asked was, did the Court make that determination? NATALIE WHITE. The Court, in not so many words, specifically held that he did not exhaust, that the other inferences, that there was mishandling, either intentional or otherwise, were not reasonable. SOTOMAYOR But the district court said that he had to present evidence of mishandling, which seems to be inconsistent with the procedural posture of the case. NATALIE WHITE. Well, the law is that first the government, the defense, must first show the availability of the remedy process. But then the burden shifts.  NATALIE WHITE. This is now the case. SOTOMAYOR And he protested. He submitted a declaration, his wife's declaration, his declaration, copies of the forms of the, what is it, number 12 or number 11? NATALIE WHITE. 11. SOTOMAYOR 11. NATALIE WHITE. Your Honor, this is the case. SOTOMAYOR And he did that. And then the district court seems to say, well, he didn't he had, he should have pointed out mishandling or he should have pointed out this  NATALIE WHITE. He was following the law, Your Honor, this new procedural framework under Albina using motion for summary judgment. There are two requirements. It's that when the burden shifts, he's got to show that he in fact exhausted or that the process was unavailable. And he's done neither, Your Honor. SOTOMAYOR Well, or raise a genuine issue of fact. NATALIE WHITE. Material fact. SOTOMAYOR Material fact. But that's what Albino was all about. Because Albino said there was a material tribal issue of fact. NATALIE WHITE. And in this case, there is not. There is no material fact in dispute. Nobody disputes that none of those remedies, not any of those three set on three different dates, were ever received by the central office. Nobody disputes that. SOTOMAYOR How come there was no declaration from somebody in the mailroom or something explaining how this all takes place? NATALIE WHITE. There was a declaration by one of the case counselors describing how the process occurs within the unit, Your Honor. Scott Poisil declaration was submitted to the court. And so that declaration SOTOMAYOR There was nobody from the mail or how they pick it up? Did he put the stamp on the envelopes? NATALIE WHITE. The inmates usually put their own stamps on the envelopes, yes. SOTOMAYOR And then they pick it up and they take it to the mailroom? NATALIE WHITE. No. There are locked boxes within the unit, and this is in the record, where the inmate places that letter, and then those letters are taken out of the locked box and then brought to the mailroom. SOTOMAYOR And are they examined? NATALIE WHITE. They are briefly scanned for contraband, yes, Your Honor. SOTOMAYOR Are they opened up? NATALIE WHITE. No, Your Honor. So it depends. If there's legal mail, there's a different process in place. So — but in the end, the question is whether or not — SOTOMAYOR So there is some handling by the prison officials? NATALIE WHITE. Oh, absolutely, Your Honor. Yes. SOTOMAYOR Right. NATALIE WHITE. And so in the end, the question is whether or not there was in fact exhaustion, which the plaintiff presented no evidence to show that he in fact exhausted. All he showed was that he mailed it. SOTOMAYOR He mailed it. NATALIE WHITE. That is an easy self-serving statement. SOTOMAYOR He didn't exhaust it. He mailed it. They didn't get it, according to the BOP. Is your argument that because the BOP is required to send a receipt that the inmate has a duty to follow up if he doesn't get the receipt? Is that your argument? NATALIE WHITE. Your Honor, I am out of time, but to answer your question, it's not necessarily a duty or a requirement as raised by counsel. It's that it's an available process to him in order to ensure that he's exhausted. SOTOMAYOR But, you see, that's where I'm worried. I think we're kind of having a semantic passing in the night. So it's not required that he do anything if he doesn't get a receipt. Is it also under the regulations deemed received once mailed? NATALIE WHITE. Absolutely not. It is considered filed once received by central office as per Federal regulation and BOP policy. And the other opportunity  SOTOMAYOR Well, once received means that you send a receipt? NATALIE WHITE. It is filed and received by the other central office in this case, that it is deemed filed and the clock starts. SOTOMAYOR Well, but that kind of misses the point. The question is, he mails it. In his view, it's deemed received and the clock starts. You're saying, well, it wasn't received. So my question really is, what role does this receipt document play in the process? NATALIE WHITE. The receipt document helps ensure for the inmate to start their 20-day clock of when they need to expect the response or the 45 days. If they don't receive it after those 45 days of when it was deemed receipt, then they've exhausted, which occurs, unfortunately, quite often. SOTOMAYOR So are you really saying that if there's no receipt document by the SOTOMAYOR Absolutely. It's never been received. You haven't exhausted, according to Federal regulations. NATALIE WHITE. Thank you.  CHIEF JUSTICE BREYER. Your Honors, the government says on page 18 of their brief quote, defendants agree that whether plaintiff mailed the three BP-11s is a disputed fact. And 28 CFR says that the inmate may consider the absence of a response to be a denial. There is absolutely nothing in the policy or the regulation that creates any duty to follow up. SOTOMAYOR So how do you think the absence of a response being deemed to be a denial fits in with this other regulation about the receipt document? CHIEF JUSTICE BREYER. Well, I think at the end of the day, if he hasn't, if he's mailed all of the documents, if he's done everything that he is instructed to do, then he has exhausted. And if the BOP is taking the position that, well, maybe you exhaust, maybe you don't, depending on the vagaries of what happens in the mail, then it's an unavailable remedy. It operates as a dead end, as the Supreme Court recently said in Ross v. Blake. And you don't have to exhaust unavailable remedies. I do want to argue for a moment for a broader remand here, in light, in part because of what Judge McGowan said about a lot of time and money being expended here. This case, this is, this case was filed in 2014. And if the district, and if this Court were to find that there wasn't exhaustion or that there was an issue of fact as to the fact of exhaustion, then the district court could simply say, see earlier opinion, I always, I already said, dismiss with prejudice on the grounds of no substantial burden and on the grounds of availability of damages under RFRA. And the court should address those arguments, because otherwise it could come right back up. And it's an outlandish outrage. But if we told the district court to conduct an evidentiary, to conduct a hearing required by Albino because of the tribal issue of fact and exhaustion, I think the district court would probably conduct a hearing. May I respond briefly? Sure. Yes. I'm sure the district court would conduct a hearing. But then it might also say, but in the earlier order I already determined. Well, assuming he concludes the district court, assuming the district court concludes that there was exhaustion, then probably fair to assume that he's going to go back to his original discussion on the merits, and that's probably what you'll get. And it would say. It would say that it wasn't exhausted and end the story. Which brings me to my question. Once you were in the district court and the district court said it wasn't exhausted, at that point, was there anything that would have precluded him from refiling his B-9 on those same issues? Because it relates to the amount of time and the use of additional religious items, I recall. So could he have just filed the B-9 appeal at that point again? Restarted the grievance process? Yes. In other words, I think that there are two reasons why that wouldn't work. All right. Or potentially wouldn't work. The first is that because there is a ruling on the merits as to substantial burden and RFRA from the district court in his case, there's a res judicata potential problem if that dismissal on the merits and with prejudice remains intact. The second problem is that I think it's unlikely that the BOP at this late stage in the game would allow a dismissal or would allow him to restart the grievance process, as opposed to simply saying it's too late. Isn't there a time limit in the regulations as to, you know, like the statute of limitations, as to how late after the grievance arises you can file your grievance? Exactly. And I believe it's 20 days. It's a continuing grievance, right? I mean, has the situation changed? I believe that there have been some changes in the situation. And it is by no means a surefire process to get through the exhaustion process simply by saying it is a continuing violation. And so I think that if... I'm just, you know, the options here are the government could deem these filed and maybe they'll go back to their office and reconsider whether that might be a reasonable means. Or another option is you could look at your downstream options if there's a continuing violation under slightly different facts, whether he could institute a grievance process on the current day issues that are before him vis-à-vis his religion. So those are options each of you could consider, right? They are. We'd be talking about restarting the process from ground zero in order to raise a point about violations that began in 2012. Thank you. Thank you. Thank both counsel for your argument this morning. Hadeen v. Castillo is submitted. The next case.
judges: Tashima, McKeown, Paez